# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

GAIL FETTER,
            Plaintiff,

            v.                                          Case No. 20-C-0633

UNITED OF OMAHA LIFE INSURANCE
COMPANY,
            Defendant.
_____

## DECISION AND ORDER

Gail Fetter brings this action against United of Omaha Life Insurance Company ("Omaha"), under the Employee Retirement Income Security Act of 1974 ("ERISA"). She alleges that Omaha wrongly denied her claim for disability benefits under a plan sponsored by her employer. Before me now are the parties' cross motions for summary judgment. *See* Fed. R. Civ. P. 56.

## I. BACKGROUND

Fetter worked for Equitable Bank, S.S.B., as a customer service representative. During her employment, she became eligible for benefits under Equitable's welfare benefits plan, which included long-term disability insurance. To fund the plan, Equitable procured a policy of long-term disability insurance from defendant Omaha, which acts as the plan administrator. The plan grants the administrator discretion to interpret the policy and decide claims for benefits. The parties agree that the plan is a "welfare benefit plan" governed by ERISA.

In February 2019, Fetter filed a claim for disability benefits under the policy. She listed her disabling condition as "lower left back spasms, pressure to have bowel

movement pain into left groin." ECF No. 17-23 at 68. After receiving Fetter's claim, Omaha began an investigation to determine whether she was disabled within the meaning of the policy. The relevant policy language states that an employee is disabled if, due to a change in the employee's "mental or physical functional capacity," she is "prevented from performing at least one of the Material Duties" of her "Regular Occupation" on a part-time or full-time basis. ECF No. 17-5 at 32. The policy defines "Material Duties" as "the essential tasks, functions, and operations relating to an occupation that cannot be reasonably omitted or modified." *Id.* at 33. The policy defines "Regular Occupation" as follows:

> *Regular Occupation* means the occupation You are routinely performing when Your disability begins. Your regular occupation is not limited to Your specific position held with the Policyholder, but will instead be considered to be a similar position or activity based on job descriptions included in the most current edition of the U.S. Department of Labor Dictionary of Occupational Titles (DOT). We have the right to substitute or replace the DOT with another service or other information that We determine to be of comparable purpose, with or without notice. To determine Your regular occupation, We will look at Your occupation as it is normally performed in the national economy, instead of how work tasks are performed for a specific employer, at a specific location, or in a specific area or region.

*Id.* at 35.

On August 7, 2019, Omaha issued a decision denying Fetter's claim for benefits. *See* ECF No. 17-5 at 133–140. Omaha's reason for denying her claim was that the medical evidence did not support her assertion that she was physically or mentally unable to perform one or more of the material duties of her regular occupation. Omaha stated that, in reaching its decision, it had considered: (1) information provided by Fetter, by Equitable, and by her primary physician; (2) Fetter's medical records, which Omaha had its internal "medical consultant" review; and (3) an "independent physician review"

completed by Dr. Steven Milos, an orthopedic surgeon, at Omaha's request. *Id.* at 134–35. Omaha identified Fetter's job as "customer service representative" and stated its understanding that she was claiming that she became disabled on April 30, 2018 as a result of "low back pain." *Id.* at 135. Omaha then provided a lengthy summary of Fetter's medical records, which disclosed various problems affecting her hip, low back, pelvis, groin, and neck that caused pain. *Id.* at 135–37. However, Omaha's medical consultant determined that the medical records did not disclose "any restrictions or limitations that would preclude [Fetter] from performing the Material Duties of [her] Regular Occupation on a full-time basis." *Id.* at 137.

Omaha's letter then focused on the independent medical review it had obtained from Dr. Milos, the orthopedic surgeon. Dr. Milos found that Fetter was disabled from May 8, 2018 to June 21, 2018, when she was recovering from hip surgery, but that at all other times she could perform all the material duties of her occupation, which he characterized as "an office-based occupation that performs a full range of customer service oriented telephone and e-mail support activities." ECF No. 17-16 at 27 of 350. Milos concluded that, after June 21, 2018, Fetter would have been able to "return to her usual job duties without restrictions." *Id.* at 28.

Based on its medical consultant's review of the medical records and Dr. Milos's conclusions, Omaha found that Fetter was disabled from May 8, 2018 to June 21, 2018, but the she was otherwise able to perform all the material duties of her regular occupation on a full-time basis. Because the policy provides that no benefits are payable unless an

employee is disabled for more than 90 days,[1] Omaha's finding resulted in a complete denial of benefits.

Fetter appealed Omaha's decision. She claimed that her job duties were more physically demanding than Omaha believed and that her disability prevented her from performing those duties. In processing the appeal, Omaha conducted a second review of the medical records and the information Fetter and Equitable had provided about her job. Omaha also asked three independent physicians to review her medical condition: (1) Dr. Michael Chen, who reviewed the case from an orthopedic perspective, *see* ECF No. 17-14 at 154–59; (2) Dr. Paul Kaloostian, who reviewed the case from a neurosurgery perspective, *see* ECF No. 17-10 at 258–61; and (3) Dr. Cyrus Kao, who reviewed the case from a pain-management perspective, *see* ECF No. 17-9 at 37–45. Finally, Omaha obtained an "occupational analysis" from a vocational-rehabilitation specialist, Angie Rhudy, *see* ECF No. 17-10 at 191–92, and asked one of its internal vocational-rehabilitation specialists, Dawn Viljoen, to provide an "addendum" to Rhudy's analysis after Fetter submitted an updated job description, *see* ECF No. 17-5 at 170.

On January 17, 2020, Omaha issued a decision upholding its denial of Fetter's claim. Omaha wrote that it understood Fetter to be claiming that she became disabled on April 30, 2018 due to "lumbar spondylosis and radiculopathy." ECF No. 17-5 at 72. Omaha then provided another lengthy summary of the medical records it had used to determine

---

[1] The policy provides that benefits will not be paid unless the employee's disability prevents her from performing her job for longer than the "Elimination Period," which is generally 90 days. *See* ECF No. 17-5 at 33, 41.

whether she was disabled. *Id.* at 72–76. It also summarized the findings of the physicians and vocational-rehabilitation specialists who had reviewed her case.

The vocational-rehabilitation specialists used the written description of the plaintiff's job and other "job-related information" to define the material duties of the plaintiff's occupation as performed in the national economy.[2] *See* ECF No. 17-10 at 191; ECF No. 17-5 at 170. The initial analysis, performed by Angie Rhudy, concluded that Fetter's occupation, as performed in the national economy, was best defined as a "Customer Service Representative Financial." ECF No. 17-10 at 191. Rhudy identified the primary material duties of this occupation as being various tasks ordinarily performed by bank branch employees, such as explaining available financial services, opening and closing accounts, entering customer information into a computer, and assisting with wire transfers. *Id.* Rhudy stated that "[t]he physical characteristics of this occupation generally fall within the sedentary exertion level." *Id.* She wrote that, according to a resource known as the "eDOT," the physical demands typically expected in this occupation were: (1) "Frequent sitting; occasional walking, standing"; (2) "Constant keyboard use; frequent reaching (desk/waist level), fingering"; (3) "Constant talking"; and (4) "Frequent near acuity, accommodation." *Id.* at 191–92. Later, after the plaintiff provided Omaha with an updated job description, Omaha's internal vocational-rehabilitation specialist, Dawn Viljoen, reviewed the updated description and confirmed that Rhudy's analysis remained accurate. ECF No. 17-5 at 170. Viljoen wrote that, "[w]hile additional job duties were

---

[2] Notably, the vocational-rehabilitation specialists did not opine whether the plaintiff could perform her occupation with her medical limitations. Their sole task was to identify the material duties of her occupation as performed in the national economy.

added, the occupation still appears Sedentary in nature, and the physical demands outlined [in Rhudy's report] would be representative of the occupation as performed in the National Economy." *Id.*

Omaha's denial letter on appeal also summarized the conclusions of the three independent physicians it had asked to review the case. Omaha noted that the neurosurgeon, Dr. Kaloostian, reviewed the plaintiff's medical records and found that "from April 30, 2018, ongoing," Fetter "would be able to work full-time without restrictions or limitations." ECF No. 17-5 at 77. However, the other two physicians, Drs. Chen and Kao, each determined that the plaintiff's conditions imposed certain physical limitations on her ability to work. Omaha summarized Dr. Chen's conclusions as follows:

> In order to provide a full and fair review or your appeal, we requested an opinion from an Independent Physician Consultant, Dr. Michael Chen, Board Certified in Orthopedics.
>
> Dr. Chen spoke with Dr. Running [Fetter's primary-care physician] on October 22, 2019, and Dr. Running stated you were not able to bend, twist, or climb. You could not lift, carry, push or pull, but you would be able to work part-time at a sedentary exertion level with no issues. . . .
>
> Dr. Chen noted after the discussion and review of the file your diagnoses were lumbar spondylosis and radiculopathy and left hip arthroplasty. He opined from April 30, 2018, ongoing you would be able to sit frequently up to 40 minutes at a time, up to six hours a day; standing occasionally, up to 20 minutes at a time, up to three hours a day; walking occasionally, up to 15 minutes at a time, up to three hours per day; lift, carry, push and pull up to 10 pounds with bilateral upper extremities; occasionally climbing stairs, stooping, kneeling, and crouching; never climb ladders or crawl; occasional reaching, overhead and below waist and at desk level with both bilateral upper extremities, and occasional use of lower extremities for foot controls, fine manipulation, and simple and firm grasp. Full-time work was supported.

ECF No. 17-5 at 76. Omaha then turned to Dr. Kao's conclusions:

> Your file was additionally reviewed by another Independent Medical Consultant, Dr. Cyrus Kao, Board Certified in Pain Management. . . .

6

Dr. Kao opined that due to left labrum tear you would have restrictions and limitations from April 30, 2019, ongoing. You would be restricted to ambulating no more than 100 feet[;] should you be required to do so, you would need a 20-minute break to rest. You should be allowed to use an assistive device for ambulation and you should be restricted from prolonged weight-bearing activities, longer than 20 minutes, as tolerated by your left lower extremity. Dr. Kao noted should you be required to bear weight for more than 20 minutes, a 10-minute break should be allowed. Your condition would continue to deteriorate as it is a degenerative condition, unless you were to undergo surgical intervention.

In an addendum review Dr. Kao further attempted to contact [your doctors] but was unsuccessful. He clarified you would have no restrictions in the terms of sitting as it related to your left lower extremity. He stated that as when you are sitting there was no weight-bearing exertions to your left lower extremity to exacerbate your symptoms, rather, sitting would alleviate any weight-bearing exertions and would help your condition.

ECF No. 17-5 at 77–78.

After summarizing the information it had considered, Omaha concluded that "the medical documentation did not contain examination or diagnostic testing that revealed any cognitive deficits or functional impairments that would have precluded you from performing your occupation." ECF No. 17-5 at 78. However, Omaha stated that it agreed with Fetter that she "would have restrictions and limitations." *Id.* It then explicitly agreed that she would be subject to the restrictions stated in the reports of Drs. Chen and Kao. *Id.* at 78–79. Ultimately, however, Omaha concluded that the "restrictions and limitations supported by the medical documentation would not preclude you from performing your regular sedentary occupation as defined by the policy." *Id.* at 79. It therefore upheld its denial of her claim.

Having exhausted her plan remedies, Fetter commenced this suit. She alleges that Omaha wrongly denied her claim for disability benefits under the plan, in violation of Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(b).

## II. DISCUSSION

The parties agree that, because the plan gives Omaha discretionary authority to determine a claimant's eligibility for benefits, the arbitrary-and-capricious standard of review applies. *See, e.g., Fessenden v. Reliance Standard Life Ins. Co.*, 927 F.3d 998, 1001 (7th Cir. 2019). Under this standard, I may consider only materials that were part of the administrative record during the plan's review of the claim. *See Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 981–82 (7th Cir. 1999). Moreover, the standard is deferential, but not a "rubber stamp, and a court will not uphold the administrator's decision 'when there is an absence of reasoning in the record to support it.'" *Hennen v. Metro. Life Ins. Co.*, 904 F.3d 532, 539 (7th Cir. 2018) (quoting *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 766 (7th Cir. 2010)).

Fetter contends that Omaha's decision was arbitrary and capricious for several reasons. First, she contends that Omaha arbitrarily classified her occupation as sedentary when the resource it used to define her occupation in the national economy—the eDOT—classifies it as light-duty. Second, she contends that, even if Omaha properly classified her occupation as sedentary, Omaha arbitrarily concluded that she could perform all the material duties of her position. Third, she contends that Omaha, as both the plan administrator and entity that pays plan benefits, has a conflict of interest that should be factored into the court's review.

I will begin with the plaintiff's second argument because it, standing alone, shows that Omaha's decision was arbitrary and capricious. The core problem is that Omaha inexplicably determined that Fetter could perform all the material duties of her occupation even though it accepted the opinions of both Dr. Chen, who determined that Fetter would

8

be able to reach at waist/desk level and engage in fine manipulation only "occasionally," and Angie Rhudy, who determined that Fetter's occupation required "constant" keyboard use and fingering and "frequent" reaching at desk and waist level.

In his report, Dr. Chen concluded that his review of the medical records showed that Fetter would be subject to the following restrictions (among others):

- Reaching: occasionally overhead and below waist level, waist and desk level with [bilateral upper extremities]

- Fine manipulation: occasionally

ECF No. 17-14 at 157. But in her occupational analysis, Angie Rhudy determined that Fetter's occupation required "[c]onstant keyboard use; frequent reaching (desk/waist level), fingering." ECF No. 17-10 at 191. Further, Rhudy's occupational analysis included definitions of the terms "occasionally," "frequently," and "constantly." *Id.* at 192. Under those definitions, "occasionally" means up to 1/3 of the time, "frequently" means between 1/3 and 2/3 of the time, and "constantly" means 2/3 or more of the time. *Id.* Although Dr. Chen did not define what he meant by "occasionally," Omaha does not contend that it understood Dr. Chen and Ms. Rhudy to have been using different definitions of the terms. Nor does Omaha contend that it understood "fine manipulation" (Dr. Chen's term) to exclude "keyboarding" and "fingering" (Ms. Rhudy's terms). Thus, Dr. Chen's and Ms. Rhudy's opinions together show that Fetter could not perform three of the material duties of her occupation: keyboarding constantly, fingering frequently, and reaching at desk/waist level frequently.

In its decision on Fetter's appeal, Omaha did not explain how it reconciled Chen's and Rhudy's conclusions with its own conclusion that Fetter was able to perform all the

material duties of her occupation on a full-time basis. When Fetter raised this issue in her brief in this court, Omaha responded by conceding that "Dr. Chen's restrictions regarding 'reaching' and 'manipulation' and 'grasp' fall[] below the Occupational Analysis" performed by Rhudy. Br. in Opp. at 12 n.9, ECF No. 24. But Omaha then argued that it "may reasonably rely upon the independent medical record review reports from Drs. Kao and Kaloostian who do not list such restrictions on Plaintiff's abilities." *Id.* However, while it is true that a plan administrator "is free to choose among different medical opinions so long as the administrator provides a rational explanation that has support in the record," *see Hennen*, 904 F.3d at 540, that is manifestly not what Omaha did here. In its written decision on Fetter's appeal, Omaha did not acknowledge that it received inconsistent medical opinions and then give a rational explanation for choosing the opinions of Drs. Kao and Kaloostian over the opinion of Dr. Chen. Rather, Omaha accepted all three opinions. Indeed, Omaha explicitly "agreed" that Fetter would be subject to all the restrictions identified in Dr. Chen's report, including occasional reaching at desk level and occasional fine manipulation. ECF No. 17-5 at 78. Thus, because Omaha accepted Dr. Chen's restrictions, it had no rational basis to also conclude that she was physically able to perform all the material duties of her occupation. Omaha cannot now reverse course and claim that it credited the opinions of Drs. Kao and Kaloostian over those of Dr. Chen. *See Gallo v. Amoco Corp.*, 102 F.3d 918, 923 (7th Cir. 1996) ("[i]f the justification that the plan administrator offers in court is inconsistent with the reason that he gave the applicant, the justification will be undermined").[3]

---

[3] Moreover, I question whether the opinions of Drs. Kao and Kaloostian provide rational grounds for discarding the opinions of Dr. Chen. Each of these physicians practices in a

Notably, Omaha does not contend that Dr. Chen's further opinion that "[f]ull-time work is supported" provides a rational basis for its decision. ECF No. 17-14 at 157. And that is for good reason. Omaha did not rely on Dr. Chen to perform an analysis of the physical demands of Fetter's occupation. Instead, it relied on Ms. Rhudy for this purpose and accepted her opinion that Fetter's occupation required "constant keyboard use; frequent reaching (desk/waist level), [and] fingering." *See* ECF No. 17-5 at 77. Moreover, nothing in the record indicates that Omaha provided Ms. Rhudy's occupational analysis to Dr. Chen and asked him to opine whether, in light of the restrictions he identified, Fetter could satisfy the physical demands of the occupation as stated in Rhudy's analysis.[4] Thus, Dr. Chen's statement that "[f]ull-time work is supported" does not provide a rational explanation for Omaha's decision.

Because the evidence in the administrative record that Omaha accepted as true establishes that Fetter could not perform some of the material duties of her occupation, I must find that Omaha's decision to deny her claim for disability benefits was arbitrary and capricious. The most common remedy when an ERISA plan administrator's benefits

different specialty. Dr. Chen is an orthopedic surgeon, Dr. Kaloostian is a neurosurgeon, and Dr. Kao specializes in pain management. Perhaps Dr. Chen found something in the medical records that, from an orthopedic perspective, would prevent the plaintiff from engaging in unlimited reaching and unlimited fine manipulation. Neither Dr. Kaloostian nor Dr. Kao reviewed the case from an orthopedic perspective, and thus it is doubtful that their failure to identify the same restrictions provides rational support for the conclusion that the restrictions are not medically required. In any event, because Omaha did not reject the opinions of Dr. Chen in the first place, I need not decide whether it would have been rational for it to have done so.

[4] Dr. Chen's report indicates that he reviewed Fetter's "job description," which was dated "1/19." ECF No. 17-14 at 154. Because Ms. Rhudy's analysis was dated October 31, 2019, Chen likely was provided with the written job description from Equitable Bank rather than Rhudy's analysis.

decision is deemed arbitrary is to remand the matter for a fresh administrative decision. *See, e.g., Lacko v. United of Omaha Life Ins. Co.*, 926 F.3d 432, 447 (7th Cir. 2019). And I find that to be the appropriate remedy here. Although Dr. Chen opined that Fetter could not reach at desk level more than occasionally or engage in fine manipulation more than occasionally, he did not explain how Fetter's medical conditions led him to form these opinions. Dr. Chen's restrictions are particularly puzzling because he listed her diagnoses as lumbar spondylosis with radiculopathy and left hip arthroscopy, conditions which would seem to primarily affect the lower body. It is unclear why Dr. Chen believed these conditions would require Fetter to limit the use of her arms for reaching and to limit the use of her fingers for fine manipulation.[5] Omaha may wish to have Dr. Chen clarify his restrictions on remand, or to have a different orthopedic surgeon review Fetter's condition. For these reasons, I conclude that "[t]his is not the rare case where the record before [the court] contains such powerfully persuasive evidence that the only determination the plan administrator could reasonably make is that the claimant is disabled." *Majeski v. Metro. Life Ins. Co.*, 590 F.3d 478, 484 (7th Cir. 2009).

Because there will be further administrative proceedings, I will briefly address Fetter's remaining arguments. First, she contends that Omaha performed no meaningful analysis of how Dr. Kao's pain-related restrictions and limitations would impact her ability to perform her occupation. It is true that, although Omaha agreed with Dr. Kao's limitations, it did not explain how it believed she could perform her occupation with those

---

[5] Dr. Chen did note in his report that Fetter had an MRI of her cervical spine that revealed some stenosis. ECF No. 17-14 at 155. Perhaps Dr. Chen believed that the stenosis caused nerve impingement in the neck, which in turn affected Fetter's ability to use her arms and fingers.

limitations. However, a simple comparison of Dr. Kao's limitations with the physical demands of the plaintiff's occupation as determined by Ms. Rhudy shows that the limitations would not prevent Fetter from performing her occupation. Dr. Kao opined that Fetter should either be restricted from ambulating greater than 100 feet or be given a 20-minute break to rest after ambulating more than that distance. ECF No. 17-9 at 43. He further opined that she should be allowed to use "assistive gait devices as recommended [by a therapist]" for ambulation. *Id.* Finally, he opined that Fetter should either not be required to bear weight on her lower left extremity for more than 20 minutes at a time or be given a 10-minute break to rest after having to bear weight for more than 20 minutes. *Id.* Because Ms. Rhudy determined that Fetter's occupation requires only "occasional" (*i.e.*, 1/3 of the time of less) walking and standing, Omaha could rationally find that Fetter could perform the usual duties of her occupation even with the restrictions identified by Dr. Kao.

Fetter contends that "common sense dictates" that someone subject to the restrictions identified by Dr. Kao would have difficulty performing any job. Br. in Supp. at 25, ECF No. 18. She argues that "[s]omeone who is in so much pain after walking 100 feet or standing for 20 minutes that he or she would need a break of 10 to 20 minutes before doing so again cannot plausibly be claimed to experience no pain from shorter periods of walking or standing or to have no pain as soon as he or she stops walking or standing." *Id.* at 25–26. However, "common sense" does not support Fetter's argument. To the contrary, common sense tells us that Dr. Kao, who specializes in pain management, chose the distances and time periods that he did because those were the distances and time periods that would allow Fetter to properly manage her pain.

13

Moreover, the plaintiff does not explain why she believes that if she experienced *any* pain from shorter periods of walking or standing, she would be excused from having to walk or stand at all. In the Social Security context, courts have noted that experiencing some discomfort during working tasks does not alone establish disability. *See Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989) (quoting *Brown v. Bowen*, 801 F.2d 361, 362 (10th Cir. 1986) for the proposition that "disability requires more than mere inability to work without pain"). Fetter has not cited any provision of Omaha's policy or any case involving ERISA disability benefits suggesting that if a worker cannot perform a task without experiencing any pain at all, he or she is disabled from performing it. In short, then, Omaha did not act arbitrarily and capriciously when it determined that Fetter could perform the material duties of her occupation despite the restrictions noted by Dr. Kao.

In her opening brief, Fetter also challenged Omaha's classification of her occupation as involving "sedentary" rather than "light" work. The argument she developed in that brief was that the resource used by Ms. Rhudy to identify the material duties of her occupation—the "eDOT"—stated that the occupation involved light work rather than sedentary work. *See* Br. in Supp. at 21. However, the parties' response briefs make clear that the argument Fetter made in her opening brief was based on her confusing two different resources. The resource that Fetter was referring to when she argued that her occupation involved light work was the Department of Labor's Dictionary of Occupational Titles, which is commonly referred to by the acronym "DOT." But this was not the resource that Rhudy used to identify the physical demands of Fetter's occupation. Instead, she used a private resource published by the Economic Research Institute known as the "eDOT." According to Omaha, the eDOT updates the "outmoded" DOT occupation

descriptions and adds new ones, and it "utilize[es] Internet technology to update all applicable worker characteristic measures." Def.'s Br. in Opp. at 5 & n.3. The parties now agree that the eDOT defines the plaintiff's occupation as involving sedentary rather than light work. However, the plaintiff contends that, by failing to provide her with a copy of the eDOT definition of her occupation during the administrative phase of this case, Omaha violated an ERISA regulation requiring the plan to provide, free of charge and sufficiently in advance of the appeal deadline for the claimant to respond, any new or additional evidence it considered or relied upon in the course of making an adverse benefit determination. *See* 29 C.F.R. § 2560.503-1(h)(4)(i). But this argument is effectively moot. Omaha's counsel provided Fetter's counsel with a copy of the eDOT definition of her occupation during briefing on the motion for summary judgment. *See* Decl. of Timothy Maynard ¶ 3, ECF No. 23. Thus, the plaintiff will be able to respond to this information during the next round of administrative review. Moreover, I trust that Omaha will supply Fetter and/or her counsel with any additional information about the eDOT that they may request during the course of further administrative review.

Fetter also claims that Omaha should not have relied exclusively on the eDOT definition of her occupation. *See* Br. in Opp. at 16–17. Fetter points out that the eDOT contains a "disclaimer" providing that its "reports are designed for use by qualified, experienced job experts and should be considered only a starting point for your research." *See* Maynard Decl., Ex. B, ECF No. 23-2. However, this disclaimer, which was probably included in the report for legal purposes, should not be taken as dispositive of the proper weight to afford the resource. Moreover, Omaha did not rely on the eDOT directly. Instead, it relied on the reports of its vocational-rehabilitation experts, who opined that

that, in light of the plaintiff's written job descriptions, her occupation was best defined with reference to the eDOT's definition of "Customer Service Representative Financial." ECF No. 17-10 at 191. Thus, Omaha complied with the disclaimer's advice to consult a qualified, experienced job expert and to go beyond the information that appears in the eDOT. In any event, the policy language in this case explicitly provides that Omaha could define a claimant's occupation using the Department of Labor's Dictionary of Occupational Titles or "another service or other information that [Omaha] determine[d] to be of comparable purpose." ECF No. 17-5 at 35 of 300. Fetter does not contend that Omaha did not reasonably determine that the eDOT was a service of comparable purpose to the DOT. Accordingly, I cannot find that Omaha's use of the eDOT was arbitrary and capricious.

Finally, Fetter contends that Omaha has an inherent conflict of interest because it is the entity that both funds the plan and determines eligibility for benefits. However, assuming that such a conflict exists, it would at most "act as a tiebreaker when the other factors [pertaining to whether the administrator acted arbitrarily and capriciously] are closely balanced." *Lacko*, 926 F.3d at 440. Here, I have already found that Omaha's decision was arbitrary and capricious, and so there is no need to resort to a tiebreaker. Moreover, I cannot envision any way in which a judicial opinion concerning Omaha's potential conflict would be instructive during the administrative proceedings to come. Thus, I will not further discuss the plaintiff's conflict-of-interest argument.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the defendant's motion for summary judgment is **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted to the extent that Omaha's decision to deny benefits is declared arbitrary and capricious. However, the motion is denied as to the requested remedy of having the court award benefits outright. Instead, the plaintiff's claim will be remanded to Omaha for further review.

**FINALLY, IT IS ORDERED** that the Clerk of Court shall enter final judgment.

Dated at Milwaukee, Wisconsin, this 7th day of May, 2021.


s/Lynn Adelman_____
LYNN ADELMAN
United States District Judge